```
              UNITED STATES DISTRICT COURT
                  DISTRICT OF VERMONT
```

```
UNITED STATES OF AMERICA      :
                              :
     v.                       :  CRIM. NO. 1:04CR39-1
                              :
SCOT FRECHETTE                :
_____:
```

RULING ON MOTION TO SUPPRESS
(Paper 57)

On March 4, 2004, a federal grand jury indicted defendant Scot Frechette on criminal charges. Five days later, federal and state law enforcement officers went to his residence to execute a warrant for his arrest.

The defendant has moved to suppress statements he made and evidence seized during the execution of the arrest warrant. On June 22, 2005, the Court held an evidentiary hearing on the defendant's motion. Upon consideration of the record, and for the reasons set forth below, the Motion to Suppress is DENIED.

Background

Special Agent Jason Laferriere, of the Department of Homeland Security ("DHS"), Immigration and Customs Division, first learned of defendant Scot Frechette when investigating marijuana smuggling into the United States. On March 4, 2004, a federal grand jury indicted Frechette on marijuana and

1

trafficking charges, and the government obtained a warrant for his arrest.

In preparation for executing the arrest warrant, Laferriere contacted Special Agent Donald Lenzie, in the DHS' Manchester, New Hampshire office, and asked him to conduct surveillance on the defendant's home on Mast Road in Manchester.  On several evenings, including March 8, 2004, Laferriere, Lenzie, and another New Hampshire police officer watched the defendant's home.  They observed, <u>inter</u> <u>alia</u>, that the defendant regularly had people at his house.  On March 8th, they observed three vehicles at the residence until late in the evening.  In addition, as a result of previous surveillance, Lenzie knew the defendant was employed and routinely left for work between 8:30 a.m. and 9:00 a.m.

At 8:00 a.m. on March 9, 2004, Laferriere, Lenzie, and approximately eight other federal and state law enforcement officers from Vermont and New Hampshire went to the defendant's home to execute the arrest warrant.  The officers knocked on a side-entrance door and identified themselves.  When the defendant opened the door, they entered his residence and arrested him.

Upon opening the door, the defendant immediately was handcuffed while officers conducted a protective sweep of his home.  The purpose of the sweep was to look for hidden individuals and weapons.  The agents testified that, in their

experience, such security sweeps are important when executing arrest warrants for those suspected of drug-related activities because of the prevalence of weapons and bystanders in such locations.  In addition, this defendant's home is in an urban area, and the agents wanted to avoid impacting other local residents.

Because the Mast Road residence is small, the sweep only took a few minutes.  The officers found no other people or weapons.

After the protective sweep, Laferriere, another DHS Special Agent, John Donnelly, and Special Agent John O'Connor of the Drug Enforcement Agency, brought the defendant into his living room and removed his handcuffs.  Other participating officers, who were waiting in the kitchen area, were asked to leave when it became apparent the defendant was calm and intended to cooperate with the government.  The agents explained to Frechette that, if he cooperated, they would report his cooperation to the prosecution, thereby possibly increasing his chances of receiving leniency.

Before eliciting the statements the defendant seeks to suppress, Laferriere read the defendant his <u>Miranda</u> rights.  The defendant verbally indicated he understood those rights and stated he would waive his rights and speak to the agents.  The

defendant also read and signed a "waiver of rights" form customarily used by Laferriere.  <u>See</u> Government's Ex. 2.

The defendant confirmed his participation in marijuana smuggling activities.  He also provided information about other people whom the government, in fact, already knew were involved with the defendant.

In addition, during the sweep, Agents Donnelly and O'Connor observed, in open view, scales, packaging material for marijuana, a safe, and a "Marlboro" dufflebag which from past experience, they knew to be a mode of transporting marijuana.  After observing these items, Laferriere asked the defendant if he would consent to a further search of his house.  Laferriere read him a "consent to search" form.  The defendant said he understood the contents of the document, indicated his continued willingness to cooperate, and signed the consent to search.  <u>See</u> Government's Ex. 1.

When the agents opened the safe, they discovered approximately $65,000 in U.S. currency, which the defendant eventually admitted he had received from past marijuana sales and which, in part, was intended for future marijuana purchases.  The defendant also told Laferriere he would participate in an interdiction involving an alleged smuggling associate with whom he had spoken the previous evening.

Agents transported the defendant to the local DHS office for photographing and fingerprinting.  At that time, the defendant expressed concern that his arrest would adversely impact his job, and particularly if he were late for work.  In addition, agents were concerned that the defendant's highly public arrest and arraignment could jeopardize his ability to cooperate with the government in future undercover activities.

Given these factors, the agents asked the defendant if he would waive his right to an initial appearance under Rule 5 of the Federal Rules of Criminal Procedure.  The agents did note the defendant could be held on the arrest warrant for some period pending a court appearance if he did not waive his Rule 5 rights.  Indicating his understanding and assent, the defendant signed a voluntary waiver of his Rule 5 rights form.  See Government's Ex. 3.

All agents who testified denied making any explicit promises of leniency or issuing any threats should the defendant refuse to cooperate.  The defendant, who also testified at the suppression hearing, stated the circumstances of his arrest caused him to feel coerced into waiving his rights.  He testified one officer, whom he could not name, indicated that he might "sit in jail" until his trial if he did not cooperate.  He also maintains he "had a million questions" about some of the rights covered by the Miranda form, but that he did not voice any of them.  In fact,

throughout the arrest, the defendant objectively exhibited understanding and was cooperative, specifically asking "Jason" Laferriere "to proceed" with questions relating to his smuggling activities and consenting to the search of his home, presumably so he could get to work.

## Discussion

Miranda warnings are required prior to interrogation of an individual who has been taken into custody. Miranda v. Arizona, 384 U.S. 436, 444 (1966)(footnote omitted). "To ascertain whether consent is valid, courts examine the 'totality of all the circumstances' to determine whether the consent was a product of that individual's free and unconstrained choice, rather than a mere acquiescence in a show of authority." United States v. Garcia, 56 F.3d 418, 422 (2d Cir. 1995)(citations and quotations omitted).

To determine whether an individual in custody has made a "voluntary, knowingly, and intelligent" waiver of his Miranda rights, the Court must make two inquiries:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature and the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of

6

>   comprehension may a court properly conclude that the
>   <u>Miranda</u> rights have been waived.

<u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986).

The record amply supports a finding that the defendant knowingly, voluntarily and intelligently waived his <u>Miranda</u> rights prior to making statements to law enforcement officials. The officers knocked on the defendant's door and identified themselves. Although he was briefly handcuffed and searched, when it became clear he was unarmed and cooperative, he was brought to his own living room and the handcuffs removed. Once there, he interacted calmly with arresting agents. Under these circumstances, the mere presence of numerous officers does not render the defendant's waiver of his constitutional rights involuntary or coerced. <u>See</u>, <u>e.g.</u>, <u>United States v. Watson</u>, 423 U.S. 411, 424-25 (1976)(custody alone is insufficient to demonstrate coercion).

Agent Laferriere read the <u>Miranda</u> warnings to the defendant, who indicated he understood them, and he signed the waiver form. The defendant's arrest, while undoubtedly startling and upsetting, was unaccompanied by any other circumstances that would indicate either he did not understand his rights or was forced to waive his rights as a result of undue intimidation, coercion or deception. The fact that agents explained the potential benefits of cooperating with authorities does not present a circumstance which renders the defendant's statements

coerced.  See United States v. Jaswal, 47 F.3d 539, 542 (2d Cir. 1995)("Generally, promises of leniency will not render a confession involuntary.").  Accordingly, the Court finds the defendant understood and voluntarily waived his Miranda rights. See United States v. Gaines, 295 F.3d 293, 299 (2d Cir. 2002)("This vague description of the potential benefits of cooperation contained no material misrepresentations or unfulfillable promises" and therefore did not render defendant's statement involuntary.).

Moreover, it is well established that where a defendant has consented to a search of his home, that search is "reasonable" under the Fourth Amendment.  See, e.g., Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973).  For the reasons already discussed, the credible hearing testimony is that the defendant voluntarily waived his Miranda rights and consented to the search of his home and safe.  In the alternative, "[u]nder the 'plain view' exception, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." United States v. Kiyuyung, 171 F.3d 78, 83 (2d Cir. 1999)(citation and quotations omitted).  Once in the defendant's home, the officers properly conducted a protective sweep, and drug paraphernalia was in plain view.  This paraphernalia,

therefore, could be seized during the execution of the arrest warrant.  See Maryland v. Buie, 494 U.S. 325 (1990)(authorizing protective sweeps as incident to an arrest).

The Motion to Suppress is DENIED.  This case shall be placed on the August 18, 2005 trial calendar.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 18th day of July, 2005.

> /s/ J. Garvan Murtha
> J. Garvan Murtha
> United States District Judge